# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| United States of America, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 17 CV 1472 |
| v. | ) |
| | ) Honorable Joan B. Gottschall |
| Juan Antonio Luna, Jr., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

The government brought this action to revoke defendant Juan Antonio Luna, Jr.'s ("Luna") United States citizenship. *See* 8 U.S.C. § 1451(a). Luna admits that he stands convicted of seven counts of murder stemming from the January 1993 killing of seven people at a Brown's Chicken restaurant in Palatine, Illinois. Am. Ans. ¶¶ 16, 25, ECF No. 28 (disputing subsection of statute of conviction).[1] Luna maintains steadfastly that he is actually innocent of those crimes. *E.g.,* Resp. 14, ECF No. 37. The government moves for judgment on the pleadings. For the reasons that follow, the court denies the motion.

## I. Factual and Procedural Background

The facts, as reflected at Luna's trial, of the seven murders need not be discussed in any detail. *See People v. Luna*, 2013 IL App. (1st) 072253 ¶¶ 3–14. The indictment against Luna charged that they occurred on or around January 8, 1993. *E.g.*, Compl. Ex. B at 2, ECF No. 1-2. He was arrested more than nine years later on May 16, 2002. Am. Ans. ¶ 16. The jury convicted him on May 10, 2007. Am. Ans. ¶ 25. Luna received a life sentence, and the Illinois Court of

---

[1] Except where otherwise noted, citations to defendant's amended answer refer to admitted facts.

1

Appeals affirmed his conviction in 2013. *People v. Luna*, 2013 IL App (1st) 072253 (Apr. 25, 2013), appeal denied 996 N.E.2d 20 (Ill., Sept. 25, 2013).

Luna became a naturalized U.S. citizen between the date of the murders and the dates of his arrest and conviction. On April 24, 1994, he filed an application ("citizenship application" also called a Form N-400) to become a naturalized U.S. citizen. Am. Ans. ¶ 28; Compl. Ex. E, ECF No. 1-5 (cited as "Form N-400"). The form asked many questions, including: "Have you ever knowingly committed any crime for which you have not been arrested?" Form N-400 at 4. The box for "no" is checked on Luna's form. *Id.*; *but see* Am. Ans. ¶ 29 (plaintiff lacks sufficient information to respond to the allegation that he checked the box). Luna's signature appears beneath language certifying under penalty of perjury that all of the statements made on the application are "true and correct." Form N-400 at 5; *but see* Am. Ans. ¶ 30 (plaintiff lacks sufficient information to admit or deny signing form). Defendant was interviewed in connection with his application by a government officer on October 27, 1994. Am. Ans. ¶ 31. Luna admits not disclosing "involvement in and commission of the" crimes. Am. Ans. ¶ 35; *see also* Am. Ans. ¶ 36 (admitting that Luna did not make the same disclosures "throughout the naturalization process" but denying involvement in murders). Luna took the oath and was admitted to naturalized U.S. citizenship on January 31, 1995.[2] Am. Ans. ¶ 39.

The government commenced this denaturalization suit on February 27, 2017. Luna filed a *pro se* answer, ECF No. 9, and a motion to recruit counsel to represent him, ECF No. 8. His motion was granted based on a finding that he was unable to hire an attorney. ECF No. 10 (May 5, 2017). Luna is represented by recruited counsel before this court.

---

[2] Luna does not argue that his responses that he lacks sufficient information to admit or deny checking the box or signing his citizenship application requires denial of the instant motion. He has therefore waived any arguments he could have made on this point.

2

On September 27, 2017, Mr. Adam Kaney ("Kaney"), an attorney with the Illinois Innocence Project ("Innocence Project"), addressed the court. Minute Entry, ECF No. 18. The attorney told the court that the Innocence Project was evaluating Luna's case to determine whether to represent him on a potential post-conviction petition, to be filed in state court, based on actual innocence. *Id.* At one point, in a statement Luna quotes in his briefing, Kaney stated that his "professional estimate of this case is that [Luna] does have a compelling case of innocence." Tr. at 5:21-23, ECF No. 37-1 Ex. A. The government's lawyer "agreed" that if Luna were "actually innocent, . . . de-naturalization . . . is not warranted." *Id.* at 7:24–8:1; *but see id.* at 4 (qualifying this statement). The case was continued pending the Innocence Project's pre-representation evaluation. In January 2018, Kaney stated that the Innocence Project identified a "potential conflict" precluding it from representing Luna. Minute Entry, Jan. 26, 2018. The case was again continued several times while Luna searched for other post-conviction counsel to represent him in state court. As far as the court knows, Luna has not found post-conviction counsel. Later, the parties attempted to settle the case. *See* ECF Nos. 19, 20, 21, 24.

The parties announced in June 2018 that their settlement efforts were unsuccessful, and the court granted Luna's motion to file an amended answer prepared by counsel, ECF No. 28.

The instant motion by the government for judgment on the pleadings followed.

## II. Legal Standard

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial," Fed. R. Civ. P. 12(c). The answer here pleads no counterclaim, and so the pleadings have closed. *See Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007) (citing *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 718 (7th Cir. 2002)). In *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993), the Seventh Circuit distinguished between two distinct ways motions for judgment on the pleadings may be used. First, the motion may be used

as an "auxiliary" way to raise Rule 12(b) defenses in "which case courts apply the same standard applicable to the corresponding 12(b) motion." *Id.* (citing *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989) (other citation omitted). Defendants often raise the Rule 12(b)(6) defense that the complaint fails to state a claim, and when that occurs the Rule 12(c) motions are governed by the same standards as a Rule 12(b)(6) motion. *E.g.*, *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043–44 (7th Cir. 2019); *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017) (citing *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The second type of Rule 12(c) motion discussed in *Alexander* occurs where a party "attempt[s] to dispose of the case on the basis of the underlying substantive merits." 994 F.2d at 336 (citations omitted). When that occurs the motion for judgment "is more like [a motion for] summary judgment than like a motion to dismiss." *Id.* at 335.

Here the plaintiff seeks entry of judgment on the case's merits, so the court views its motion through a summary judgment lens. Nevertheless, the court cannot consider matter outside the pleadings without converting the motion to a summary judgment motion. Fed. R. Civ. P. 12(d). The court may consider the complaint, the answer, exhibits incorporated into the pleadings, *see* Fed. R. Civ. P. 10(c), and matters of which the court may take judicial notice. *Orgone Capital*, 912 F.3d at 1043 (citing *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017)). Within the confines of the pleadings, "the moving party must demonstrate that there are no material issues of fact to be resolved," particularly where no discovery has been taken. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (citing *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995)). Consistent with the summary judgment standard, the facts alleged in the complaint must be viewed in the light most favorable to Luna, the party resisting judgment on the pleadings, and unsupported conclusions of law receive no deference. *Moss*, 473 F.3d at 698; *N. Ind. Gun &*

4

*Outdoor Shows*, 163 F.3d at 452. "Only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved will a court grant a Rule 12(c) motion." *Moss*, 473 F.3d at 698 (citing *Brunt*, 284 F.3d at 718–19).

### III. Discussion

Withdrawing citizenship is a "drastic measure." *Schneider v. Rusk*, 377 U.S. 163, 168 (1964) (denouncing as "impermissible" the assumption that "naturalized citizens as a class are less reliable and bear less allegiance to this country than do the native born"). The government seeks to denaturalize Luna on all three grounds set forth in 8 U.S.C. § 1451(a): (1) "that [the] order and certificate of naturalization were illegally procured," (2) that they "were procured by concealment of a material fact," or they were procured "by willful misrepresentation." 8 U.S.C. § 1451(a). "The evidence against the naturalized citizen . . . must be clear, unequivocal, and convincing." *United States v. Ciurinskas*, 148 F.3d 729, 732 (7th Cir. 1998) (citing *Fedorenko v. United States*, 449 U.S. 490, 505 (1981)).

Each of the government's three grounds for denaturalization boils down to Luna's failure to disclose his commission of the 1993 murders. Luna maintains his innocence as a factual matter, but the convictions presently stand. Luna does not expressly contest the government's invocation of the collateral estoppel doctrine. Resp. to Mot for J. Pleadings 14, ECF No. 37. It is clear, however, that plaintiff's motion for judgment on the pleadings hinges on applying collateral estoppel, for without it, Luna's claims of actual innocence must be litigated.

Also called issue preclusion, collateral estoppel embodies the principle that "allowing the same issue to be decided more than once wastes litigants' resources and adjudicators' time, and it encourages parties who lose before one tribunal to shop around for another." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1298–99, 191 L. Ed. 2d 222 (2015); *see also*

*Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326–27 (1979).  In the Seventh Circuit "a guilty plea in a criminal case can be used to establish collateral estoppel in a later civil action." *United States v. 10652 S. Laramie, Oak Lawn, Ill.*, 774 F. Supp. 518, 520 (N.D. Ill. 1991) (citing *Appley v. West*, 832 F.2d 1021, 1026 (7th Cir. 1987)); *see also In re Teltronics, Ltd. v. Kemp*, 649 F.2d 1236, 1239 (7th Cir. 1981).

The Seventh Circuit applied these principles to hold in *United States v. Suarez*, 664 F.3d 655 (7th Cir. 2011), that a defendant in a civil denaturalization proceeding could not "re-litigate issues decided in his criminal case." *Id.* at 663 (citing *United States v. Jean–Baptiste*, 395 F.3d 1190, 1194–95 (11th Cir. 2005)).  The defendant in *Suarez* wished to relitigate the seriousness of his role in the offense, a matter that had been actually determined at sentencing. *Id.*  The government reasons *a fortiori* here that Luna cannot relitigate whether he was actually innocent of the seven murders of which he stands convicted.

The government does not analyze the elements of issue preclusion in its briefing.  To invoke issue preclusion, four things must be true: "(1) the issue sought to be precluded must be the same as that involved in the prior action, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action." *In re Grand Jury Proceedings of Special Apr. 2002 Grand Jury*, 347 F.3d 197, 202 (7th Cir. 2003) (citations omitted), cited in *Suarez*, 664 F.3d at 663.  Additionally, even where these elements of collateral estoppel are present, this court possesses "broad discretion" in deciding whether to permit a plaintiff to use the doctrine offensively to bar a defendant from relitigating a matter decided in a suit brought by another party. *Parklane Hosiery*, 439 U.S. at 331; *Garza v. Henderson*, 779 F.2d 390, 393 (7th Cir. 1985). The Supreme Court has given the following example of the final issue preclusion element:

> Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stands squarely against their position.

*Garza*, 792 F.2d at 393 (quoting *Blonder-Tongue Labs. v. Univ. of Ill. Found.*, 402 U.S. 313, 339 (1971)).

Though he does not directly contest issue preclusion in his response brief, Luna raises issues bearing on elements of the doctrine throughout it. He points repeatedly to Kaney's statements to the effect that he may have a "compelling" actual innocence claim. Tr. of Hr'g held Sept. 27, 2017, at 5, ECF No. 37-1. As the government stressed, this statement was tentative, *see id.*, and Luna has not obtained counsel to represent him to press his claim of actual innocence.

While the issue of newly discovered evidence has been raised, it has not been briefed under collateral estoppel principles. The court knows little to nothing about the basis of Luna's potential actual innocence claim. In *Suarez*, the defendant sought to relitigate issues that were actually decided at his criminal sentencing. 664 F.3d at 663. To prevail on an actual innocence claim, by contrast, Luna will need to present "newly discovered evidence" to an Illinois court. *Blackmon v. Williams*, 823 F.3d 1088, 1097 (7th Cir. 2016) (citing *People v. Ortiz*, 919 N.E.2d 941, 950 (Ill. 2009)). Hence Luna's potential actual innocence claim appears to be based on evidence that was not available before Luna's conviction became final. That is, his actual innocence claim may be based on evidence he has not presented to an Illinois court. *See Blonder-Tongue Labs.*, 402 U.S. at 339; *Garza*, 792 F.2d at 393. A party may avoid collateral estoppel by showing that "newly discovered evidence was essential to a proper decision in the prior action and . . . that he was in no way responsible for the lack of such evidence in the prior action." *Cent. States, Se. and Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 962 F. Supp. 122,

123 (N.D. Ill. 1997) (quoting *McLellan v. Columbus I–70 W. Auto–Truckstop, Inc.*, 525 F. Supp. 1233, 1235 (N.D. Ill. 1981)); *see also Wsol v. Carr*, 2001 WL 1104641, at *6–9 (N.D. Ill. Sept. 18, 2001) (applying rule to claims under federal law). Because the issue has been framed under other doctrines, neither party has addressed how this, and other collateral estoppel principles apply.

For related reasons the court cannot determine whether it would be fair to apply issue preclusion here. A litigant's *pro se* status in the prior suit or the current one does not insulate him from the collateral estoppel doctrine. *DeGuelle v. Camilli*, 724 F.3d 933, 938 (7th Cir. 2013). Here, however, Luna has no attorney to represent him to present his newly discovered evidence to an Illinois court. Luna and the Innocence Project's lawyer have represented that the file is "massive" and that the investigation of Mr. Luna's claims entailed obtaining, through public records requests, documents created during the ten-year investigation that led to Luna's arrest. *See* Tr. at 5–7. Those representations suggest that Luna needs an attorney if he is to have an opportunity meaningfully to present his actual innocence claim. Indeed, that seems to have been the premise of the many continuances of this action. This issue has not been briefed by the parties under a collateral estoppel analysis, and the court implies no view on it. But without some information about the nature of Luna's actual innocence claim and the newly discovered evidence on which it is based, the court cannot tell whether Luna has a meaningful opportunity to litigate it in state court without counsel—something which may itself involve an analysis of Illinois law.

This court has previously denied a government motion for judgment on the pleadings in a denaturalization proceeding because the record was not clear that the requirements of collateral estoppel were satisfied. *United States v. Arnaout*, 2015 WL 12826475 at *3–4 (N.D. Ill. Aug. 26, 2015) (Gottschall, J.) (exactly which facts were admitted at plea hearing not sufficiently

clear; elements of collateral estoppel briefed for the first time in a reply brief). That is the case here. The court cannot say at this time that "clear, unequivocal, and convincing" evidence warrants application of collateral estoppel and therefore denaturalization. *Fedorenko,* 449 U.S. at 505. Without implying a view on the ultimate issue, a decision on whether the elements of collateral estoppel are satisfied and on whether applying the doctrine would be fair to Luna, *Park Lane*, 439 U.S. at 331, requires development of the record on the matters discussed.

## IV. Conclusion

For the reasons stated, the government's motion for judgment on the pleadings is denied. A status hearing is set for March 15, 2019, at 9:30 a.m. At the status hearing, the court will address its need (1) to understand something about newly discovered evidence and (2) to find out whether Luna has any meaningful opportunity to raise this issue in state court.

ENTERED:

Dated: March 8, 2019                  /s/
                                                      Joan B. Gottschall
                                                      United States District Judge